## Wytheville.

PERSINGER'S ADM'R V. CHAPMAN.

July 9, 1896.

Absent, Harrison, J.

1. EQUITABLE RELIEF—*Reformation—Mutual Mistake.*—Equity will not relieve against an alleged mutual mistake of fact when it is clear that there can be no true statement of the case established, and that any effort to reform the instrument alleged to have been executed in mutual mistake would in all probability, if not certainly, result in injustice to the estate of one of the parties.

2. EQUITABLE RELIEF—*Mutual Mistake—Diligence.*—Equity will not extend its aid to one who has been guilty of culpable negligence. It requires that the party who asks relief on the ground of mutual mistake shall have exercised at least the degree of diligence which may be fairly expected of a reasonable person under the circumstances.

Error to a judgment of the Circuit Court of Roanoke county, rendered October 3, 1892, in action of debt, wherein the plaintiff in error was the plaintiff, and the defendant in error and another were the defendants.

*Reversed.*

The opinion states the case.

*L. H. Cocke,* for the plaintiff in error.

*G. W. & L. C. Hansbrough* and *R. H. Logan,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is an action of debt brought by the personal representative of James S. Persinger, deceased, in the Circuit Court of Roanoke county, on a bond executed by F. J. Chapman and F. Rorer, his surety, to the plaintiff's testator in his lifetime, for the sum of $1,250, bearing date February 13, 1883, and payable six months after date, with interest.

At the trial the defendant, Chapman, tendered his special plea in writing in the nature of a plea of equitable set-off, the substance of which is that the bond sued on was executed under a mistake, in payment for twenty-four acres of land in Roanoke county, known as a part of the "Chapman Mill Property," while, in fact, at the date of the execution of the bond, Chapman had fully paid for the same. Upon this plea issue was joined, and, after all the evidence was submitted, the plaintiff demurred to the defendant's evidence, and, both parties agreeing thereto, the jury was discharged from the further consideration of their verdict, and all matters in issue, both of law and fact, were referred to the court for its decision, and the court overruled the demurrer, and gave judgment for the defendant. To this judgment a writ of error was awarded by a judge of this court.

The evidence adduced by the defendant, Chapman, in support of his plea shows, at the most, that the transaction between him and the plaintiff's testator, who was the defendant's father-in-law, ran over a period of at least eight or ten years prior to the execution of the bond, and involved frequent payments of money by the one for the other; that the transactions between them were numerous and their accounts of them very imperfectly kept, so that any account that may be stated between the parties, especially in view of the death of one of them, must be purely conjectural. The witnesses testified more from impressions upon their minds than from any knowledge they had of the transactions between the parties. Indeed, one of the defendant's witnesses, Ballard, frankly states that the impressions as to which he testifies

are gotten from the testimony of another witness whose
deposition was taken in another case and read in this
case, and not from anything which he himself knows of the
transactions between Chapman and Persinger. It is admit-
ted that the consideration for the bond was the conveyance
of the twenty-four acres of land to the defendant Chapman's
wife, and that the deed was executed and acknowledged by
Persinger on the day after the bond was executed; and the
witness Ballard also testifies that he was present on the 14th
of February, 1883, the day after the bond sued on was exe-
cuted, when a settlement of a general character was had be-
tween Persinger and Chapman, which resulted in Chapman
executing two other bonds to Persinger, one of which was
also signed by his wife, and that the $1,250 bond did not
enter into this final settlement, if indeed, it was men-
tioned at all. It is a significant fact that, although Persinger
lived nearly two years after the bond was executed, there is
not the slightest evidence that Chapman ever suggested the
mistake that he now claims was made.

What was said by Moncure, P., in *Foster* v. *Rison*, 17 Gratt.
340, a case very similar to the one at bar, is peculiarily ap-
propriate here, viz.: " It is possible after all, that the account
given of this matter in the examination of Wm. Rison is the
true one, and that the credit of $975 given to J. W. F. in the
settlement was in fact given by mistake. But whether the
fact be so or not, I think it is not proved by that degree and
amount of evidence which ought to be required under the
circumstances, and that, in attempting to correct such sup-
posed mistake, there would be danger of doing injustice to
the estate of J. W. Foster."

The effort of Chapman is to show that, in the final settle-
ment with Jas. S. Persinger, February 14, 1883, he was im-
properly charged with a certain bond of one John A. Per-
singer, which he (Chapman) had assigned to his trustees,
and which he in fact had paid at the instance of Jas. S. Per-

singer, and that when he executed the bond for the twenty-four acres of land, he had made payments on account of the purchase by him of .the entire " Chapman Mills Property," equal, if not in excess of the amount that he was to pay therefor, and that, if he had been given credit for this bond and all payments made on the mill property, he would have owed Persinger nothing. The attempt to show that he had not been credited in the final settlement, with the John A. Persinger bond, was made in the suit brought against Chapman and wife to recover the bond executed by them, which was given as the result of the final settlement referred to, and which suit was finally decided by this court (*Chapman & Wife* v. *Persinger's Ex'x.*, 87 Va. 581), and against Chapman, and by the decision, the decree of the lower court was reversed on the ground, among others, that "whilst equity will reform instruments executed in mutual mistake, yet this can never be done unless the true state of the case can be established," and that the evidence was insufficient to show the true state of the case.

The evidence in the case here is clear that there could be no true statement of the case established, and that any effort to reform the instrument claimed to have been executed in mutual mistake would in all probability, if not certainly, result in injustice to the estate of James S. Persinger, dec'd.

Equity will not extend its aid to one who has been guilty of culpable negligence. It requires that the party who asks relief on the ground of mutual mistake shall have exercised at least the degree of diligence which may be fairly expected from a reasonable person. And it has been repeatedly decided that equity will not relieve against mistake when the party complaining had within his reach the means of ascertaining the true state of facts, and, without being induced thereto by the other party, neglected to avail himself of his opportunities of information. Beech on Mod. Eq. Jur., pp. 53–4., *Foster* v. *Rison, supra, Towner* v. *Lucas,* 13 Gratt. 705,

722; *Harris* v. *Harris,* 23 Gratt. 766; *White* v. *Campbell,* 80 *Va.* 181; *Chapman* v. *Persinger,* 87 Va. 309; *Grymes* v. *Saunders,* 93 U. S. 55.

In the case last cited it was said: "A court of equity is always reluctant to rescind unless the parties can be put back in *statu quo.* If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands."

There is nothing whatever in the evidence to take this case out of the operation of these well established rules, and we are therefore of opinion that the evidence is plainly insufficient to sustain the defendant's special plea, and that it was error in the court below to overrule the demurrer to his evidence and give judgment for him, and the judgment will be reversed and annulled, and this court will enter such judgment as the court below should have entered, sustaining the plaintiff's demurrer to defendants' evidence, and giving judgment for the plaintiff for the amount of the debt sued on, with interest and costs.

*Reversed.*