Gladys Ryan BISSETT (formerly Gladys Luckenbach), Plaintiff,

v.

Phillip BARNETT et al., Defendants.

No. 35420.

United States District Court
N. D. California, S. D.

Dec. 6, 1956.

Scampini, Mortara & Ertola, San Francisco, Cal., for plaintiff.

Barnett & Robertson, San Francisco, Cal., for defendants Barnett and Robertson.

George Chadwick, Jr., San Francisco, Cal., for defendant Wente.

HARRIS, District·Judge.

Plaintiff, formerly the fourth wife of the late Lewis Luckenbach, has presented her amended complaint against the defendants who served as trustees under a trust created by Luckenbach. Plaintiff predicates her cause on a charge of alleged fraud · on the part of the trustor and the several trustees who allegedly conspired to defraud her. The complaint is captioned as one for damages, conspiracy to deceive and fraud.

Defendants filed a motion to dismiss the original complaint and after lengthy argument and briefing Judge Edward Murphy dismissed the complaint on his own motion, stating in part that the court did not intend to "lend implied sanction to a shocking case of failure to abide by Fed.R.Civ.P. 8 [28 U.S.C.A.]." The full text of the court's order appears in the footnote.[1]

Plaintiff has filed her amended complaint which seeks to rehabilitate, and to avoid apparent inconsistent theories which appear upon a comparison of the original complaint and the amended complaint.

 Under the circumstances the original and amended complaints must be considered together in meeting the impact of the present motion to dismiss. Lee v. Hensley, 103 Cal.App.2d 697, 230 P.2d 159; Zakaessian v. Zakaessian, 70 Cal.App.2d 721, 161 P.2d 677.

The following narrative of alleged facts, insofar as they are relevant to the instant motion, may be gathered from the original and amended complaints as follows:

In July of 1935 plaintiff married Lewis Luckenbach. Shortly after the marriage the individuals separated. In July of 1936 plaintiff instituted a separate maintenance action against her husband in which she was awarded custody of the new-born daughter and was given $400 per month as alimony and support money.

In 1936 at or about the time plaintiff obtained her separate maintenance decree, defendants, together with Lewis Luckenbach, entered into an agreement for the creation of a trust for the benefit of Lewis Luckenbach. The trust property was to consist of the trustor's vested remainder in the estate of his grandfather, Commodore Luckenbach, and the contingent remainder of his other grandfather, one Vickers (contingent on his surviving his mother).

1. "These are motions to dismiss and motions for a more definite statement, in an action of tort for a conspiracy to defraud and the execution of that conspiracy. Jurisdiction is based upon diversity of citizenship.

"The record presents an extreme example of the precise evil which was intended to be eliminated by the Federal Rules of Civil Procedure, especially Rule 8. The complaint numbers thirty·pages. It is full of evidentiary recitals, conclusions of law, material irrelevant to the theory of the action, inconsistencies of fact and logic, and it is redundant in the extreme.

"The motions to dismiss and for a more definite statement have been supported by lengthy briefs dealing with the numerous issues which may lurk in the complaint. The brief of plaintiff in opposition to the motions to dismiss and for a more definite statement reduces the theory of the complaint to one of tort, a matter by no means obvious upon a reading of the complaint.

"In view of the heavy investment of time in this record on the part of counsel and the Court, it is tempting to adjudicate these motions on the basis of the present record. But to do so would be to lend implied sanction to a shocking case of failure to abide by Fed.R.Civ.P. 8, requiring a short and plain statement of the cause of action. The Court, therefore, on its own motion, orders the complaint stricken for failure to comply with Fed.R.Civ.P. 8, with leave to file a complaint complying with that Rule. In view of this order, the motion for a more definite statement becomes moot, and the motions to dismiss are made premature."

It is alleged that in 1939 plaintiff was persuaded by defendant Barnett to obtain a Nevada divorce and enter into a property settlement agreement.

Under the terms of the property settlement agreement plaintiff was to receive $20,000 from her husband by means of the property he anticipated receiving from his grandfather's estate. Payments were to be at the rate of $2,500 per month until some $10,000 had been received by plaintiff. Thereafter, an additional $10,000 was to be paid when the Lewis Luckenbach trust received added moneys from the Commodore Luckenbach estate. The agreement also provided for payments to plaintiff's daughter commencing at the rate of $100 a month and increasing up to $200 per month as she matured in years. (Lewis Luckenbach actually paid some $1,400 to his daughter through her mother.)

Plaintiff alleges she was persuaded to obtain the Nevada divorce and enter into the property settlement agreement because of the written assurance given her by the trustees that they would guarantee payment of the above sums. The trustees entered into an undertaking obligating them to make payments out of the corpus of the trust, in the event Lewis Luckenbach failed to perform.

In January 1940 plaintiff made a demand upon the initial three trustees—Barnett, Wente and Landres—for payment of moneys due under the property settlement agreement. Lewis Luckenbach had agreed that the trustees might make direct payment to plaintiff in the event he failed to live up to the terms of the property settlement agreement. Defendant trustees informed plaintiff they had no assets in January 1940 but indicated they would perform when assets came into their hands.

When Commodore Luckenbach died in 1943 defendant trustees commenced proceedings in New York to obtain Lewis Luckenbach's interest in his grandfather's estate.

In June of 1945 plaintiff again made a demand upon the trustees for moneys owing under the property settlement agreement. Once more they informed her that they had no assets and questioned whether they would realize any. However, they promised to perform the agreement if they should obtain assets.

Actually, as plaintiff has alleged, the trustees received from the estate of Lewis Luckenbach large sums over a period of years commencing in 1940. These moneys, as alleged by plaintiff, were paid directly to Lewis Luckenbach and his nominees.

The amended complaint states that the trust is now without assets. However, it is to be observed that in the original complaint plaintiff alleged that the trust had funds in the neighborhood of $200,000 to $250,000. Both pleadings are verified.

Finally, plaintiff alleges that she had no knowledge of the fact that the trustees received any funds until February of 1956. In the preceding sixteen years plaintiff was assertedly led to believe by the representations of defendants that they had no funds and that they would perform their obligations if and when they received any moneys.

Plaintiff has omitted from the amended complaint factual considerations which appeared in the original, with regard to notice, reliance, representation by counsel and other important factors surrounding the issue of fraud. In this respect the pleadings affirmatively show that plaintiff was represented by counsel in 1936 when she obtained her separate maintenance decree and again in 1939 when she entered into a property settlement agreement and obtained a divorce. In 1940 she was again represented when she made demand upon the trustees, and again in 1944 when, as it is alleged, she first learned of the judicial proceedings in New York and employed a firm of New York attorneys to represent her. One of these attorneys came to San Francisco, and, as it appears, made demand upon the trustees. (Par. XX, XXI of original complaint).

It also appears affirmatively from the original complaint that on April 8, 1946,

there was received by the trustees $102,-184.97; September 16, 1946, $200,000; January 9, 1947, $201,433.85; this, in addition to other moneys received in excess of $300,000. (Par. XXIV original complaint). Further and more recently, on July 25, 1955, there was distributed to the Lewis Luckenbach trust from the estate of Commodore Luckenbach $192,-711.35.

These payments were made in probate proceedings and were matters of public record, open to plaintiff's counsel, in the City of New York. Under the circumstances it is inescapable that the amended complaint is subject to the bar of the statute of limitations. Neither reasonable, nor any diligence is manifest.

Plaintiff in the closing brief attempted to explain away her legal dilemma by stating:

"True it is that plaintiff, in paragraph XXI of the original complaint admits that in 1944 she retained counsel to assert her rights under the contract against the trustees, but it is alleged in the same paragraph that the defendants, for the purpose of covering up the fraud made certain representations as to material facts to her counsel, which plaintiff alleges she believed to be true and relied thereon, when in truth and in fact they were not true as finally disclosed to her on February 1, 1956, in said sworn statement. * * * The most that she could have discovered was that the trustees were in possession of assets out of which they could have performed their undertaking but, in this respect, plaintiff had the right to rely upon the written undertaking of the defendants, and to assume that when they could perform they would perform as they promised they would perform."

Not only do the pleadings state the plaintiff out of Court, but as well her briefs and arguments exemplify the fatal defects implicit in the pleadings.

Plaintiff, under counsels' own admissions, could have instituted appropriate proceedings based on the express contract of the trustees upon default of Lewis Luckenbach. No action was taken, nor was action taken under the fraud theory.

The authorities in this Circuit, Prentiss v. McWhirter, 9 Cir., 63 F.2d 712, as well as in California, compel this Court to hold that the action is barred by the statute of limitations. In Prentiss v. McWhirter, supra, Judge Wilbur quoted with approval from Lady Washington Consol. Co. v. Wood, 113 Cal. 482, 45 P. 809, in applying the statute of limitations to an action based on fraud where discovery had not timely occurred:

" 'Under the cases in this state (California) it is not enough to assert that the discovery was not sooner made. It must appear that it could not have been made by the exercise of reasonable diligence; and all that reasonable diligence would have disclosed plaintiff is presumed to have known, means of knowledge in such a case being the equivalent of the knowledge which it would have produced.' " [63 F.2d 713]

Similar holdings are to be found in Aker v. Sears Roebuck & Co., D.C., 38 F.Supp. 741; Brictson v. Woodrough, 8 Cir., 164 F.2d 107; Sears Roebuck & Co. v. Blade, D.C., 123 F.Supp. 131, 140.

Accordingly, It Is Ordered that defendant's motion to dismiss the amended complaint be granted; and that the said complaint and action be, and the same hereby are, Dismissed. Counsel may present a judgment of dismissal based on the within order.

In view of the foregoing it is unnecessary to pass upon the other and several grounds urged for dismissal.